1   Arasto Farsad, ESQ. (SBN 273118)
2   Kristina Pedroso, ESQ. (SBN 291040)
    FARSAD LAW OFFICE, P.C.
3   2905 Stender Way, Suite 76
    Santa Clara, California 95054
4   Telephone Number: (408) 641 – 9966
    Facsimile Number: (408) 866 – 7334
5   Email Address: FarsadLaw1@gmail.com;
6   kpedrosolaw@gmail.com

7   Attorney for Plaintiff
     RENEE S. ORTEGA
8

9                   UNITED STATE DISTRICT COURT
10               NORTHERN DISTRICT OF CALIFORNIA

11                     (UNLIMITED CIVIL CASE)
12

13   RENEE S. ORTEGA,                    Case No.:

14                         Plaintiff,    **PLAINTIFF'S VERIFIED COMPLAINT
                                         FOR DAMAGES AND EQUITABLE RELIEF**
     vs.
15
16   BANK OF AMERICA, N.A., a foreign        1.  Breach of Contract Seeking
     corporation; and DOES 1 through 10          Damages or Specific Performance;
17   Inclusive,                              2.  Promissory Estoppel;
                                             3.  Breach of the Implied Covenant of Good
18                                               Faith and Fair Dealing;
19                         Defendant(s).     4.  Negligence;
                                             5.  Violation's of CA's Unfair Competition
20                                               Law (Negligence and Unfairness); and
                                             6.  Wrongful Foreclosure
21
22                                       DEMAND FOR JURY TRIAL
23                                       Subject Property: 1816 Bradbury Street,
                                         Salinas, CA 93906
24

25        COMES NOW, Renee S. Ortega, ("Plaintiff"), by and through her attorney of record, Farsad

26   Law Office, P.C., in bringing the instant Verified Complaint for Damages And Equitable Relief against

27
28                                              1

─────────────────────────────────────────────

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
                            Case No.:

Defendant BANK OF AMERICA, N.A, a foreign corporation, ("BANA"); and DOES 1-10 Inclusive.

## I.   INTRODUCTION

1. This case arises from Defendant's egregious and illegal breach of a second lien Home Equity Line of Credit ("HELOC") loan modification agreement executed on September 28, 2015, ("Agreement").

2. Plaintiff was approved for a second lien HELOC loan modification with Defendant, Bank of America, N.A., ("BANA") on September 28, 2015. (*See*, **Exhibit 1 – second lien HELOC loan modification agreement**).

3. Her monthly payments under the Agreement were: $390.58 from September 25, 2015 to September 24, 2016; $456.10 from September 25, 2016 to September 24, 2017; and $456.75 from September 25, 2017 to September 25, 2055.

4. Plaintiff had been making payments on time, and sometimes *more*, towards the HELOC principal balance. (*See*, **Exhibit 2 – Mrs. Ortega's payments towards her HELOC loan modification agreement**).

5. On or about January 1, 2018, when Plaintiff tried to pay her monthly payment she noticed that the BANA online account balance of $206,000.00, was zero (0).

6. Plaintiff immediately contacted BANA customer service.  The representative she spoke with, Dorian, stated that the account had been "charged off". Mrs. Ortega then told Dorian that she was in an active loan modification and **NEVER** missed a payment.  She paid approximately 27 payments on-time and usually paid MORE than what was owed!

7. BANA's representative, Dorian, told her that he could not do anything for her - even though she had made the payments consistently, and **ALWAYS** on time.

2

8. To add insult to injury, BANA appears to have begun foreclosure proceedings against Mrs. Ortega.

9. Plaintiff brings this action against BANA to enforce the terms of the second lien HELOC loan agreement and to recover in equity (specific performance), and/or actual damages, in amounts to be proven at trial, of no less than $75,000.00; plus the payments Plaintiff has already made, approximately $10,800.00; as well as, costs and attorney's fees.

## II. PARTIES

10. At all times mentioned herein, Plaintiff is an individual who resides in Monterey County, State of California.

11. Defendant, Bank of America, N.A., was and is still a national banking association with its principal place of business in Charlotte, North Carolina, and is duly authorized to do business in the State of California.

12. Plaintiff is ignorant of the true names and capacities of Defendants sued as DOES 1–10, inclusive, and therefore, Plaintiff sues these Defendants by such fictitious names. Plaintiff will seek leave of Court to amend this Complaint to allege their true names and capacity(s) when they have been ascertained. DOES 1–10, inclusive, are persons or entities whose true names and identities are now unknown to Plaintiff, and, therefore, sued by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities once ascertained.

13. Based on information and belief, each of the Defendants, including DOES 1–10, acted in concert with each and every other Defendant, intended to and did participate in the events, acts, practices and courses of conduct alleged herein, and was the proximate cause of damage and injury to Plaintiff.

## III. JURISDICTION AND VENUE

3

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
Case No.:

14. This Court has jurisdiction over this action under 28 U.S.C. §1332(a)(1) because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00. Plaintiff is a citizen of California, and BANA is a foreign corporation with its principal place of business in North Carolina and, hence, is a citizen of North Carolina for the purpose of diversity jurisdiction.

15. Venue is proper in the Northern District of California according to 28 U.S.C. § 1391(b) because a substantial part of the actions or omissions giving rise to this action occurred within this district and the property that is the subject of this action is situated in this district.

## IV. JURY TRIAL DEMAND

16. Plaintiff respectfully requests a jury trial on all appropriate issues raised in this complaint.

## V. FACTS

17. Plaintiff owns and resides at the real property located at 1816 Bradbury Street, Salinas, California 93906 ("Property").

18. Plaintiff was induced by a loan agent from Countrywide, to re-finance her old mortgage loan with two new mortgage loans. Plaintiff was unaware that she had received a negative amortization, adjustable rate, high-interest-only loans.[1]

### Countrywide's Fraudulent and Predatory Lending Practices

19. Countrywide committed many "predatory" lending practices involving one or more of the following:

    a. Engaging in fraud or deception to conceal the true nature of the mortgage loan obligation;

---

[1] Predatory lending generally defines a range of abusive and aggressive lending practices by lenders. These practices include deception or fraud, charging excessive fees and interest rates, making loans without regard to a borrower's ability to repay, or refinancing loans repeatedly over a short period of time to incur additional fees without any economic gain to the borrower.

4

b. Inducing and coercing borrowers to repeatedly refinance their loans in order to charge high points and fees; or

c. Making loans based on the foreclosure value of a borrower's collateral rather than on the borrower's ability to repay the mortgage loans.

20. Countrywide's agents and employees were compensated based on the volume of loans originated; and received higher compensations when they sold these non-traditional loan products versus standard loans.[2]

21. Countrywide did not verify a borrower's repayment capacity, income, assets and/or liabilities; and also failed to inform borrowers with interest-only or negative amortizing loans that refinancing was highly unlikely unless the value of their home increased significantly.

22. As a direct and proximate consequence of Countrywide's fraudulent practices, borrowers were harmed when they received these predatory loans.

23. Defendant, BANA, subsequently purchased Countrywide and all its toxic mortgage loans on or about July 1, 2008.  Because BANA is the assignee and successor-in-interest to Countrywide's loans, it is subject to all claims Plaintiff has against Countrywide.

24. On May 11, 2015, Plaintiff filed a lawsuit to address the rampant fraud and other violations committed by Countrywide and BANA.

25. After the suit was filed, Plaintiff's counsel and Defense counsel started attempting to settle the case; and a settlement agreement was reached on both the first and second lien loans. (*See,* **Exhibit 1).**

26. The loan agreement at issue in this case is the second lien HELOC loan modification.  The terms of the second lien HELOC loan modification agreement were as follows:

---

[2] Bank of America, which acquired Countrywide Financial Corp. earlier this year, settled predatory-lending claims with 11 state attorneys general in October. The settlement will modify hundreds of thousands of loans to help homeowners avoid foreclosure. *Countrywide Settles States' Predatory-Lending Claims,* by Allison Torres Burtka; Trial, December 2008, at 15.

5

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Beginning On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 | 2.740% | September 25, 2015 | $390.58 | $0.00 | $390.58 | October 25, 2015 | 12 |
| 2 | 3.740% | September 25, 2016 | $456.10 | $0.00 | $456.10 | October 25, 2016 | 12 |
| 3-40 | 3.750% | September 25, 2017 | $456.75 | $0.00 | $456.75 | October 25, 2017 | 455 |
| Final Payment | | | | | **$92,801.55 | | |

27. Plaintiff *always* paid on time according to the terms of the Agreement. Plaintiff should not suffer when she has kept up with her end of the bargain, by making approximately 27 on-time payments for over two years!  [A true and correct copy of Plaintiff's checks showing she paid the monthly payments under the second lien HELOC loan modification agreement is attached as, **Exhibit 2**)].

28. Defendant breached the terms of the second lien HELOC loan modification by "charging off" Plaintiff's account without notice.

29. Therefore, Plaintiff files the instant lawsuit for damages and equitable relief stemming from Defendant's failure to comply with the terms of the Agreement.

## V.   LEGAL CLAIMS / ISSUES

### 1.   FIRST CAUSE OF ACTION
Breach of Contract

30. Plaintiff re-alleges and incorporates by reference all paragraphs above as though fully set forth in this cause of action.

///

///

///

6

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
Case No.:

31. The elements for a breach of contract claim are: (1) the existence of a contract; (2) plaintiff's performance of the contract or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damage to plaintiff.[3]

### 1.   Existence of A Contract.

32. Plaintiff and Defendant entered into the Agreement on September 28, 2015. (**See, Exhibit 1**).

### 2.   Plaintiff's Performance.

33. Plaintiff fulfilled her obligations under the Agreement by making monthly payments to BANA, per the terms of the Agreement. (**See, Exhibit 2 – Plaintiff's monthly payments to BANA per Agreement**).

34. Based on the foregoing, Plaintiff performed all required covenants of the Agreement, and Defendant was required to adhere to the terms of the Agreement by allowing Plaintiff to make payments until September 25, 2055.  Defendant failed to do so.

### 3.   Defendant's Breach

35. As stated above, Defendant "charged off" Plaintiff's HELOC payments account, which constituted an express breach of the terms of the Agreement.

### 4.   Damages

36. As a direct and proximate result of Defendant "charging off" Plaintiff's account, and breaching the terms of the Agreement, Plaintiff has suffered damages.

37. Since the elements for breach of contract have been established, Plaintiff should be entitled to receive all applicable recoveries under this cause of action.

---

[3] *Lortz v. Connell*, 273 Cal. App. 2d 286, 290 (1969); It is hornbook law that the essential elements to be pleaded in an action for breach of contract are: (1) the contract; (2) plaintiff's performance of the contract or excuse for nonperformance; (3) defendants' breach; and (4) the resulting damage to plaintiff. *Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830, 442 P.2d 377; *Daum v. Superior Court* (1964) 228 Cal.App.2d 283, 287; *Wise v. Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 59.

7

---

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
Case No.:

38. Plaintiff is entitled to monetary damages and/or actual damages, in amounts to be proven at trial, of no less than $75,000.00; plus the payments Plaintiff has already made, approximately $10,800.00, as well as, costs and attorney's fees. (The subject loan balance for the second lien HELOC loan account was approximately $206,000.00 before it was charged-off).

## 5.  Specific Performance

39. The availability of the remedy of specific performance is premised upon well-established requisites. These requisites include: A showing by Plaintiff of (1) the inadequacy of his/her legal remedy; (2) an underlying contract that is both reasonable and supported by adequate consideration; (3) the existence of a mutuality of remedies; (4) contractual terms which are sufficiently definite to enable the court to know what it is to enforce; and (5) a substantial similarity of the requested performance to that promised in the contract. [4]

40. As discussed above, Plaintiff's main desire is to stay in her home.  She has completed all that is required of her under the terms of the Agreement, and it was only until BANA flagrantly "charged off" her account, ***without reason***, that Plaintiff is in the position that she is in today.

41. A legal remedy for monetary damages would be inadequate to the extent that it would not put Plaintiff in the same place she was in before Defendant breached the terms of the Agreement.

42. Plaintiff has established that the terms of the Agreement are sufficiently definite.  There is also adequate consideration and substantial similarity of the requested performance to the contractual terms.  There is mutuality of remedies and Plaintiff's legal remedy (monetary damages) may be inadequate, as Plaintiff's home is unique to her. Therefore, Plaintiff is entitled to specific

---

[4] *Henderson v. Fisher* (1965) 236 Cal.App.2d 468, 473; *Tamarind Lithography Workshop, Inc. v. Sanders* (1983) 143 Cal.App.3d 571, 575.

8

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
Case No.:

performance of the Agreement so that she may continue to make payments, as she has done so diligently for over two years, to BANA and stay in her home.

## 2.  SECOND CAUSE OF ACTION
### Implied Covenant of Good Faith and Fair Dealing

43. Plaintiff re-alleges and incorporates by reference all paragraphs above as though fully set forth in this cause of action.

44. "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract."[5] The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." [6] "Without a contractual relationship, [a plaintiff] cannot state a cause of action for breach of the implied covenant."[7]

45. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and in its enforcement.  This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits under the agreement.

46. Defendant did not act in good faith when they "charged off" Plaintiff's HELOC loan modification account. Defendant carelessly "charged off" her account knowing full well that Plaintiff has always made her payments on time and has done so for over two years.

47. As detailed above, Plaintiff has established the elements for a contract.  Defendant breached the Implied Covenant of Good Faith and Fair Dealing by "charging off" Plaintiff's loan

[5] *Smith v. City and County of San Francisco,* 225 Cal.App.3d 38, 49.
[6] *Pasadena Live, LLC v. City of Pasadena,* 114 Cal.App.4th 1089, 1093–1094, (citation omitted.)
[7] *Smith,* 225 Cal.App.3d at 49; *Hardy v. Indymac Federal Bank* (E.D. Cal. 2009) 263 F.R.D. 586, 592.

9

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
Case No.:

1    modification account in direct violation of the second lien HELOC loan modification

2    agreement.  Defendant also impaired Plaintiff's right to receive benefits under the terms of the

3    Agreement by preventing her from making further payments to the second lien HELOC loan

4    modification account. Therefore, Plaintiff is entitled to relief under this cause of action.

5

6    48. Plaintiff has suffered substantial harm caused by Defendant's breach of the Implied Covenant of

7        Good Faith and Fair Dealing; and therefore, Plaintiff is entitled to monetary damages and/or

8        actual damages, in amounts to be proven at trial, of no less than $75,000.00; plus the payments

9        Plaintiff has already made, approximately $10,800.00; as well as, costs and attorney's fees.

10

11                            **3.  THIRD CAUSE OF ACTION**
                                    Quantum Meruit

12   49. Plaintiff re-alleges and incorporates by reference all paragraphs above as though fully set forth

13       in this cause of action.

14

15   50. Quantum meruit permits the recovery of the reasonable value of services rendered.[8]  To recover

16       in quantum meruit, the "plaintiff must establish *both* that he or she was acting pursuant to either

17       an *express or implied request* for such services from the defendant *and* that the services

18       rendered were *intended to and did benefit* the defendant"; further, the defendant must have "

19       'retained [the]  benefit with full appreciation of the facts....' "[9]

20

21   51. Plaintiff was acting pursuant to an express written second lien loan HELOC loan modification

22       agreement, signed by Defendant, to settle the alleged fraud lawsuit. Plaintiff's actions were

23       intended to benefit Defendant and did benefit them, since Defendant would not have to litigate

24       the alleged fraud lawsuit. Defendant fully appreciated all the facts since the Agreement was

25

26   _____

27   [8] *Palmer v. Gregg* (1967) 65 Cal.2d 657, 660, 422 P.2d 985.
     [9] *Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 248; *Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.* (2017) 12 Cal.App.5th 200, 214–215.

28                                          10

extensively negotiated by both sides and the terms were clearly stated in a written contract. Therefore, Plaintiff should be entitled to recover under quantum meruit.

52. Plaintiff has suffered substantial harm caused by Defendant not being able to sell the Property and therefore, Plaintiff is entitled to monetary damages and/or actual damages, in amounts to be proven at trial, of no less than $75,000.00; plus the payments Plaintiff has already made, approximately $10,800.00; as well as, costs and attorney's fees.

### 4.   FOURTH CAUSE OF ACTION
Promissory Estoppel

53. Plaintiff re-alleges and incorporates by reference all paragraphs above as though fully set forth in this cause of action.

54. The elements of promissory estoppel are: (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise was made, (3) substantial detriment or injury caused by the reliance on the promise, and (4) damages.[10]

55. The doctrine of promissory estoppel, as stated in section 90 of the <u>Restatement Second of Contracts</u>, provides: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." California has adopted this rule.[11]

#### 1.   Clear and Unambiguous Promise.

56. Defendant clearly and unambiguously promised Plaintiff that they would be able to perform certain acts, detailed in the Agreement.

---

[10] *US Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 905 (Cal. App. 4th Dist. 2005) (citing *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal. App. 3d 885, 890 (Cal. App. 2nd Dist.1976)).

[11] *US Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 905 (Cal. App. 4th Dist. 2005); *Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority*, 23 Cal. 4th 305, 310 (Cal. App. 2nd Dist. 2000).

11

**2.  Reasonable and Foreseeable Reliance.**

57. Plaintiff reasonably relied on Defendant's promise and complied with all their demands and requests by making payments, sometimes in excess, of what she was required to do per the Agreement.

**3.  Substantial Detriment or Injury Caused by the Reliance.**

58. Plaintiff relied on Defendant's promise to honor the terms of the second lien HELOC loan modification agreement to her detriment.  If Plaintiff would have known that Defendant had no intention of performing, (i) Plaintiff would not have entered into the Agreement; (ii) would not have made monthly payments of approximately $10,800.00, according to the Agreement and (iii) would not now be facing imminent of the Property, once again.

59. Because of Defendant's promise, Plaintiff diligently complied with all terms of the Agreement. Therefore, there was substantial detrimental reliance and injury to Plaintiff caused by Defendant's failure to uphold the terms of the Agreement.

**4.  Damages.**

60. As direct and proximate result of Defendant's false promise, Plaintiff has suffered, and will continue to suffer, substantial and irreparable injury, and possibly the loss of her Property. Plaintiff has also incurred additional damages, litigation expenses and costs.  Accordingly, Plaintiff has suffered both general and special damages, in amounts to be proven at trial.

61. Defendant's failure to adhere to the terms of the Agreement when Plaintiff justifiably relied on Defendant's promise to do so, caused Plaintiff substantial harm and therefore, Plaintiff is entitled to the benefit of her bargain, and/or actual damages, in amounts to be proven at trial, of no less than $75,000.00; plus the payments Plaintiff has already made, approximately $10,800.00; as well as, costs and attorney's fees.

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
Case No.:

## 5.   FIFTH CAUSE OF ACTION
Negligence

62. Plaintiff re-alleges and incorporates by reference all paragraphs above as though fully set forth in this cause of action.

63. As alleged above, Defendant acted negligently and recklessly by breaching their duty to uphold the terms of the Agreement by ensuring that all of their agents complied with the terms of the Agreement.

64. The elements for a negligence cause of action are: (1) a legal duty to use due care; (2) a breach of that duty: (3) a reasonably close, causal connection between that breach and the plaintiff's resulting injury; and (4) actual loss or damage to the plaintiff.[12]

65. According to *Nymark v. Heart Federal Savings & Loan Assn,* a financial institution generally "owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as mere lender of money."[13]

66. The *Nymark* court however, simply found that the financial institution owes no duty to the borrower under the facts of that case after analyzing them according to the six-part test established in *Biakanja v. Irving.*[14]

67. Thus, the *Nymark* court "does not support the sweeping conclusion that a lender never owes a duty of care to a borrower," rather it stated that whether a lender owes such a duty requires the balancing of the *Biakanja* factors.[15]

68. Defendant owes a duty to use reasonable care in reviewing the application, according to *Alvarez*

---

[12] *People v. Young*, 20 Cal. 2d 832, 129 P.2d 353 (1942);  *Ahern v. Dillenback*, 1 Cal. App. 4th 36; *see also* Cal. Civ. Code §1714(a) ("Everyone is responsible, not only for the result of her willful acts, but also for an injury occasioned to another by her want of ordinary care or skill in the management of her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself.").
[13] *Nymark v. Heart Federal Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (Cal. App. 3rd Dist. 1991).
[14] *Biakanja v. Irving*, 49 Cal. 2d. 647, 650-651 (1958).
[15] *Jolley*, 213 Cal. App. 4th at 901.  *See generally Biakanja v. Irving*, 49 Cal. 2d 647, 650-651 (1958).

13

1    *v. BAC Home Loans Servicing, L.P.*[16]

2    69. The *Biakanja* factors for determining whether to recognize a duty of care are: (1) the extent to

3    which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the

4    plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the

5

6    connection between the defendant's conduct and the injury suffered; (5) the moral blame

7    attached to the defendant's conduct; and (6) the policy of preventing future harm.

8                                    Analysis under *Biakanja*

9    70. **The extent to which the transaction was intended to affect Plaintiff**.  Defendant and Plaintiff

10   had entered into an arrangement where Plaintiff would pay Defendant monthly payments

11   according to the second lien HELOC loan modification Agreement. The transaction was intended

12

13   to affect Plaintiff because her home was made vulnerable under the terms of Agreement.  Plaintiff

14   would be substantially harmed by a potential foreclosure, if Defendant did not uphold their

15   promise under the Agreement.

16   71. **The foreseeability of harm to Plaintiff**.   It is clearly foreseeable that Plaintiff would be

17   irreparably harmed by Defendant's failure to adhere to the terms of the Agreement and lose her

18   home.  In fact, Plaintiff is facing possible foreclosure of her home once again. Plaintiff had

19   made timely monthly payments to Defendant and was ***never*** late. Plaintiff was harmed because

20

21   she lost the ability to pay the second lien loan; and is once again, facing foreclosure.

22   72. **The degree of certainty that Plaintiff suffered injury**.  It is more than certain that Plaintiff

23   would be harmed by Defendant's failure to go through with the terms of the Agreement.  Since

24

25   Plaintiff has been prevented by Defendant to pay the second lien loan, Plaintiff is now facing

26   possible foreclosure.

27   _____

[16] *Alvarez v. BAC Home Loans Servicing, L.P.*, Cal. App. 1st Dist. (2014).

28                                              14

73. **The closeness of the connection between Defendant's conduct and the injury suffered**. Defendant's conduct is directly connected to Plaintiff's injuries because Plaintiff would still be able to keep her house by making payments under the terms of the Agreement. Plaintiff would not be facing possible foreclosure had the Defendant had kept up with the terms of the Agreement and not reneged on their promise.

74. **The moral blame attached to defendant's conduct**. Defendant's failure to perform their obligations under the Agreement and sell the Property is morally reprehensible. When Plaintiff entered into the Agreement to settle the second lien HELOC loan, she believed Defendant would keep their promise. Plaintiff held her end of the bargain; making timely monthly payments for over two years. Defendant continued to accept Plaintiff's payments (around $10,800.00) and is now charging off the account without any explanation as to why. To make matters worse, Defendant is foreclosing on Plaintiff, when Plaintiff has done **NOTHING** wrong.

75. **The policy of preventing future harm**. The policy of preventing future harm strongly favors imposing a duty of care on Defendant because the California Legislature "has expressed a strong preference for fostering more cooperative relations between lenders and borrowers who are at risk of foreclosure, so that homes will not be lost."[17] Until the law holds lenders and mortgage servicers, such as Defendant, liable for their misconduct, the abuse will continue, as well as the corresponding consumer lawsuits. Requiring Defendant to strictly comply with the law would help save Plaintiff, and other similarly situated homeowners, from unnecessary harm. Thus, it is vital to California's interests in preventing Defendant's misconduct from harming

---

[17] *Alvarez*, 2014 WL 3883282, (quoting *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 903 (Cal. App. 1st Dist. 2013).

15

California communities and economies.

76. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered, and will continue to suffer, substantial and irreparable injury from the imminent loss of her Property, costs and fees, and attorney's fees. Plaintiff has also suffered both general and special damages, in amounts to be proven at trial; but currently, no less than $200,000.00.

77. Plaintiff is entitled to monetary damages, and/or actual damages, in amounts to be proven at trial, of no less than $75,000.00; plus the payments Plaintiff has already made, approximately $10,800.00, as well as, costs and attorney's fees.

78. Plaintiff is also entitled to punitive damages to deter Defendant from such outrageous, reckless conduct; as well as to deter other lenders, servicers, and loan originators who are likely to commit similar acts in the future. Defendant's conduct was malicious, fraudulent, and oppressive, as defined in Cal. Civil Code § 3294; and Plaintiff should therefore recover, in addition to actual damages, punitive damages to punish Defendant for their wrongful conduct.

## 6.  SIXTH CAUSE OF ACTION
Violation of CA's Unfair Competition Law

79. Plaintiff re-alleges and incorporates by reference all paragraphs above as though fully set forth in this cause of action.

80. As alleged above, Defendant violated California Business and Professions Code § 17200 et seq., by engaging in unlawful, unfair, and fraudulent business acts or practices.

81. California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice." Business and Professions Code section 17200 "establishes three varieties of unfair competition—acts or practices which are unlawful, unfair, or fraudulent."[18]

---

[18] *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (Cal. App. 2nd Dist. 1996).

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
Case No.:

The code section is written in the disjunctive, and thus requires that only one prong is satisfied in order to find liability.[19]

82. UCL borrows violations of other laws and makes those practices actionable under the UCL.[20] Accordingly, the violation of another law is a predicate for stating a claim for relief under the unlawful prong of UCL.[21] The unlawful practices prohibited by Business and Professions Code § 17200 are "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made."[22]

83. Defendant has violated the UCL under two prongs: (1) under Cal. Civ. Code, section 1714(a) (negligence) and (2) under the doctrine of unfairness.

    a. **Defendant's violation of the UCL under Negligence.**

        i. A violation Cal. Civ. Code, section 1714(a) is per se violation of the UCL. As mentioned above, Defendant violated Cal. Civ. Code § 1714(a) because they owed a duty of care to Plaintiff as his lenders to follow the terms of the Agreement and act in in good faith. Their conduct fell below the standard of care when Defendant "charged off" plaintiffs second lien HELOC loan account when she had been making payments on time for over two years. Defendant's act of closing Plaintiff's account and preventing her from making payments according to the terms of the Agreement fell below the reasonable standard of care because Defendant did not act according to the terms of the Agreement in bad faith.

    b. **Defendant's violation of the UCL under the "unfairness" prong.**

---

[19] *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co*, 20 Cal. 4th 163, 180 (1999).
[20] *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (Cal. App. 1st Dist. 1999); *State Farm Fire &amp; Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (Cal. App. 2nd Dist. 1996).
[21] *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (Cal. App. 4th Dist. 2007).
[22] *Saunders v. Superior Court* (1994) 27 Cal. App. 4th 832, 838–39 (emphasis added).

17

i. California's UCL prohibits business practices that are "unfair, unlawful or fraudulent."[23] Plaintiffs UCL claim is now limited to the "unfair" prong of the UCL.[24]

ii. Under California law, it is well established that "a practice may be deemed unfair [under the UCL] even if not specifically proscribed by some other law."[25] In other words, "[w]hile a UCL claim against an 'unlawful' practice may require a statutory or regulatory violation, an unfair practice does not."[26]

iii. Defendant has committed acts of "unfair" competition as proscribed by California Business and Professions Code § 17200. Specifically, Defendant engaged in unfair business practices by:

    a. Charging off Plaintiff's account without reason.

    b. Not allowing Plaintiff to make payments according to the terms of the second lien HELOC loan modification agreement.

    c. Possible foreclosure of Plaintiff's property even though she has been making payments to keep the property under the Agreement.

iv. These acts constitute "unfair" business acts under California Business and Professions Code Section 17200 et seq., because they offend public policy and are substantially injurious to Plaintiffs and all consumers. These acts have no

[23] Cal. Bus. & Prof. Code § 17200.
[24] See FAC ¶¶ 77 (alleging Defendant's "unlawful and unfair business practices").
[25] Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999).
[26] Zuniga v. Bank of America N.A., 2014 WL 7156403, at *7 (C.D. Cal. 2014); see id. ("[A] plaintiff may state a claim [under the UCL] for an unfair practice without relying on that practice being unlawful.").

18

utility and do not outweigh the substantial harm to Plaintiffs and other distressed homeowners.[27]

84. As a direct and proximate result of Defendant's unlawful (violation Cal. Civ. Code, section 1714(a)), unfair, and fraudulent business practices, Plaintiffs have suffered, and will continue to suffer, substantial and irreparable injury from the potential loss of the Subject Property, and is entitled to monetary damages, and/or actual damages, in amounts to be proven at trial, of no less than $75,000.00, plus the payments Plaintiff has already made, approximately $10,800.00; as well as, costs and attorney's fees.

## 7.  SEVENTH CAUSE OF ACTION
Wrongful Foreclosure (Re-initiated foreclosure proceedings)

85. Plaintiff re-alleges and incorporates by reference all paragraphs above as though fully set forth in this cause of action.

86. As detailed above, Defendant failed to perform certain required actions pursuant to the second lien HELOC loan modification agreement. Defendant's agents acted negligently and recklessly by "charging off" Plaintiff's account when she had been making her payments on time; and Plaintiff was detrimentally harmed.

87. Defendant should not be entitled to foreclose on the Property when they were the ones at fault in acting with negligence and recklessness, in violation of a signed Agreement.

---

[27] In *Perez v. Citimortgage, Inc.*, 2014 WL 2609656 (C.D. Cal. June 10, 2014): The "unfair" prong of a UCL claim is satisfied, according to this court, if "the gravity of the harm to the [borrower] outweighs the utility of the [servicer's] conduct." The court considered the "public policy" test, which looks for conduct that is "tethered to an underlying constitutional, statutory or regulatory provision," but chose the broader approach instead. The court then applied the balancing test to borrower's complaint. Borrower alleged servicer failed to comply with HAMP in executing its loss mitigation programs, failed to supervise its employees properly, sent borrower conflicting messages, and "routinely demand[ed] information it already had, and fail[ed] to communicate accurately or consistently with [borrower] about the status of his loan modification application." Essentially, borrower identified the nearly ubiquitous allegations brought by borrowers in foreclosure cases: that servicer's mishandling of loan modifications led to a deliberately drawn-out and unsuccessful process. The gravity of borrower's harm – never knowing if he would receive a modification or if he should take other steps to avoid foreclosure—outweighs the utility of servicer's delay of the modification process. The court denied servicer's MTD borrower's "unfair" prong UCL claim.

---

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
Case No.:

88. These kinds of actions by Defendant are what the statute is designed to deter – fraudulent, malicious and oppressive conduct.   Plaintiff had agreed to settle the matter amicably and Defendant acted in extreme contradiction to the executed Agreement.   They should not be able to gain from their own misconduct.

89. Therefore, Plaintiff is entitled monetary damages, and/or actual damages, in amounts to be proven at trial, of no less than $75,000.00, plus the payments Plaintiff has already made, approximately $10,800.00; as well as, costs and attorney's fees.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant(s), jointly and severally, as follows:

1. For damages sustained by Plaintiff due to Defendant(s) wrongful acts in amounts to be proven at trial, approximately no less than $206,000.00, plus any other applicable monetary or equitable damages and attorney's fees;

2. For disgorgement of all monies acquired by Defendant(s) wrongful and negligent conduct;

3. For specific performance of the Agreement;

4. For punitive damages for their malicious and willful misconduct under Cal. Civil Code § 3294;

5. For reasonable attorney's fees and costs of suit, and all relief granted; and

6. For such other and further relief as this Court deems appropriate.

Dated:  1 - 25 - 18

Kristina Pedroso, ESQ.
Attorney for Plaintiff
Renee S. Ortega

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
Case No.:

88. These kinds of actions by Defendant are what the statute is designed to deter – fraudulent, malicious and oppressive conduct.   Plaintiff had agreed to settle the matter amicably and Defendant acted in extreme contradiction to the executed Agreement.   They should not be able to gain from their own misconduct.

89. Therefore, Plaintiff is entitled monetary damages, and/or actual damages, in amounts to be proven at trial, of no less than $75,000.00, plus the payments Plaintiff has already made, approximately $10,800.00; as well as, costs and attorney's fees.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant(s), jointly and severally, as follows:

1.  For damages sustained by Plaintiff due to Defendant(s) wrongful acts in amounts to be proven at trial, approximately no less than $206,000.00, plus any other applicable monetary or equitable damages and attorney's fees;

2.  For disgorgement of all monies acquired by Defendant(s) wrongful and negligent conduct;

3.  For specific performance of the Agreement;

4.  For punitive damages for their malicious and willful misconduct under Cal. Civil Code § 3294;

5.  For reasonable attorney's fees and costs of suit, and all relief granted; and

6.  For such other and further relief as this Court deems appropriate.

Dated: 1-25-18

Kristina Pedroso, ESQ.
Attorney for Plaintiff
Renee S. Ortega

20

---

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
Case No.:

## VERIFICATION OF PLAINTIFF

I, RENEE S. ORTEGA, hereby declare that:

1.   I am the Plaintiff in the above-entitled action.

2.   The matters stated in the foregoing Plaintiff's Verified Complaint for Damages and Equitable Relief are true of my knowledge except as to those matters which are stated on information and belief, and as to those matters, I believe that they are true.

3.   I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on JANUARY 13, 2018, at MONTEREY, California.

Printed name: RENEE S. ORTEGA

Signature: _____

21

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
Case No.: